[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 266 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 267 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 268 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 269 
The principal questions in this case are those raised by the exceptions to the findings of the referee: 1st, as fact admitted by the pleadings, that the sum of $736.86 was paid, laid out and expended by the intestate, in his lifetime, for the plank road company, by direction of the board of directors, and of persons authorized by them; and 2d, as a conclusion of law, that the company was indebted to the intestate, at the time of his death, in the sum of $607.14, besides interest.
The substance of the pleadings, so far as they relate to these questions, are as follows: The plaintiffs allege that the intestate, in his lifetime, while acting as treasurer of the plank road company, from time to time, by the direction of the board of directors, advanced and laid out in keeping the road in repair, a large sum, amounting to about $800, over and above the amount received by him from the tolls and earnings of the road; and that at the time of his death the company was justly indebted to him in the sum of $744.74, on account of such advances. To these allegations the defendants answer:
1. That they have no knowledge or information sufficient to form a belief that, at or before the decease of the intestate, said company was justly indebted to him in said sum of $744.74, or any sum whatever, for money expended in repairing the road, or in any other manner.
2. That the intestate, during the time the indebtedness is alleged to have accrued, was secretary and treasurer of the company, and well acquainted with the condition and the amount of earnings and expenditures; and was directed and authorized by said company "to lay out and expend in the repairing, grading and the work and labor necessary to do the same, the surplusreceipts and earnings of said road and no more;" and that the alleged advances, if made at all, were made by said intestate, "contrary to the wishes and instructions of said company, and inhis own wrong."
The first defence (the particular form of denial being such as is prescribed by the Code) is the exact equivalent of nildebet, at common law. It may admit of some doubt whether *Page 271 nil debet was not a proper answer to this complaint. The facts stated in the complaint are peculiar; and do not vary materially from an indebitatus count in debt, according to ancient forms of pleading. The statement of the advances to the amount of about $800 beyond tolls and earnings, is not put forth as the cause of action, but only as inducement; the cause of action being that at the time of the intestate's death there remained due to him, as a balance of advances, over and above tolls and earnings, the sum of $744.74; and for this sum judgment is demanded. To such a complaint I think the ancient plea of nil debet is a good answer under the Code. In Gates v. Wheeler (2 Hill, 233), BRONSON, J., says: "In debt for rent, by indenture, or for an escape, or for a devastavit by executor, it has been held that the indenture, or the judgment, is but inducement; and that the arrears of rent, the escape and devastavit are the foundation of the action; in these cases nil debet is a good plea." (Bullis v. Giddins, 8 John., 82; Dartmouth College v.Clough, 8 N.H., 28.)
But whether the preceding position is correct or not, it was too late to object, at the close of the trial, that this division of the answer did not put the fact of indebtedness in issue. Under the former system of pleading, nil debet to an action of debt on bond or judgment was bad on general demurrer, but if, instead of demurring, the plaintiff went to trial on that issue, it was always held to put him to the proof of his cause of action. Mr. Starkie says (2 Starkie's Ev., 140): "The plaintiff in an action on a bail bond, whether he be the sheriff or his assignee, under the plea of non est factum need prove the execution only; but if he should inadvertently have joined issue upon a plea of nil debet, instead of having demurred, he will be bound to prove all the averments, the issuing of the writ, the arrest, the execution of the bond, and the assignment if the action be brought by the assignee." This effect has constantly been given to the plea of nil debet, notwithstanding its acknowledged insufficiency if demurred to, both in England and in this country. (Rawlins v. Danvers, 5 Esp., 38; Anonymous, 2 Wils., 10; 2 Phil. Ev., Cow. Hill's ed., 168; *Page 272 
1 Chitty on Pleading, 433, Springfield ed., 1844.) In Myers v.McLean (2 Johns., 183), the court says of such a plea to debt on a judgment: "We are all of opinion that the plaintiff, having treated this plea, in the present case, as a legal plea, and gone to trial upon it, he cannot now allege anything against it, and is concluded by his own acts." This decision was on a motion in arrest of judgment, but the ruling has been the same where the objection was taken in evidence, under the plea at the trial. InRush v. Corbett (2 Johns. Cas., 256), where nil debet was plead to an action of debt on a judgment, it was insisted on the trial, that the plea did not put the judgment in issue. The contrary was held, and, on a motion for a new trial, RADCLIFF, J., delivering the opinion of the court, said: "If the plea ofnil debet had any effect or operation, I think it was incumbent on the plaintiffs to prove the record. It is the general issuewhich admits nothing, and is a total and general denial of the plaintiff's right of action." I think, therefore, that under the strictest rules of special pleading, the first defence of this answer, if not objected to as insufficient, before the trial, by demurrer, would always have been held sufficient, on the trial, to put in issue the plaintiff's cause of action; and that, in view of the late gentle admonition of the legislature to courts, that, "in the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties," the referee erred in holding that the defendant had admitted the indebtedness of the corporation, when they expressly denied it.
There are, I think, much stronger reasons now for holding such answer sufficient, on the trial, to put the question of indebtedness in issue, than there were when the decisions were made, to which I have referred. There was then no method of objecting to the pleadings except by demurrer, which was an expensive and dilatory proceeding. Parties are now provided with short and cheap methods, by motion, to compel defective pleadings to be amended, stricken out, or that judgment be pronounced upon them summarily; and they can have no *Page 273 
excuse for reserving such objections until the close of a trial. I am of opinion that where that course is taken, the party must stand upon the pleadings and the evidence together; that the judgment must be such as the whole case, pleadings and evidence united, demands, and that it would be the duty of the court, under section 176 of the Code, to disregard defects in the pleadings not before noticed, or to order the required amendments under sections 170 and 173. If, however, the case should be such as to satisfy the court that either party had been misled by the defects in the pleadings, it should be disposed of under section 169. As the present case may be disposed of without adopting any principle so general, the decision, of course, will not depend upon its soundness.
The second division of the answer was also sufficient to put in issue the alleged indebtedness. The plaintiffs say that Simmons made advances for repairs, by direction of the directors, to the amount of $800 over and above his receipts, and that when he died the company was indebted to him $744.74 on account of such advances. The defendants answer, that at the time the indebtedness is alleged to have accrued, Simmons was treasurer, and received the earnings of the road, and was authorized to expend in repairs the surplus earnings of the road, and no more. This allegation, without any aid from the subsequent portions of the answer, puts in issue the authority of Simmons to make any advances beyond the receipts, or to create any indebtedness against the company. The words "and no more" are equivalent to "et non" or "absque hoc," the technical words of traverse of the old system of pleading. The brevity of the expression takes nothing from its force, and it amounts to a denial of all authority in Simmons to make advances beyond the receipts, and consequently to create a debt against the company. The attention of the court below does not appear to have been called to this view of the answer.
There is a further allegation in the answer, to the effect, that Simmons was expressly forbidden to incur any liability on the part of the company, which was properly characterized *Page 274 
in the court below as new matter, to be proved by the defendants; and that court held that the question whether the allegation was proved was for the referee to decide, upon the evidence, and that his decision was final. If he had decided the question upon the evidence, although it might appear to this court that the allegation was sufficiently proved, the decision would be regarded as conclusive. The referee, however, did not pass upon the evidence, but held the fact of indebtedness admitted by the pleadings, without reference to the evidence, in which respect I think he committed an error in law that cannot be overlooked. A new trial must, therefore, be granted, and it is unnecessary to examine the questions presented by the decisions in regard to the admission and rejection of evidence.