CHARLES HILDEBRANT, Respondent, *v.* EDGAR M. CRAWFORD, Appellant.

EDGAR M. CRAWFORD, a survivor, &c., Appellant, *v.* CHARLES HILDEBRANT and others, Respondents.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1871.)

An agent, acting within the general scope of his apparent authority, purchased personal property, for which he gave a note signed by him as agent, without naming the principal. The property purchased was received by the principal. *Held,* the payee having taken the note *bona fide* that it bound the principal, notwithstanding the agent's instructions prohibited him from giving notes.

*Held,* also, that the receipt of the property, for which the note was given, rendered the principal liable for its value, and that the note was at least evidence of such value in an action counting on the indebtedness, as well as on the note.

The prohibition of section 399 of the Code does not prevent a party from testifying, in an action in which the legal representatives of a deceased person are adverse parties, to a conversation between the deceased and a third person, also deceased, which was overheard by the witness.

Nor is a party prohibited by that section from testifying to a transaction between himself and the agent of deceased, previous to the time of his death.

Parol evidence is admissible in an action for the foreclosure of a mortgage, payable in money, assigned by the mortgagee as collateral security for the payment of his indebtedness to the assignee, that it was agreed that such indebtedness was to be paid in produce.

Hildebrant *v.* Crawford.

A statement copied from a book of account and compared therewith is, upon loss of the book, admissible to prove the account.

Where two actions are tried together, costs are taxable in both, except, perhaps, *it seems* but one trial fee should be allowed.

THE first of the above entitled actions was brought to recover the sum of $1,822.10 for produce alleged to have been sold and delivered by the plaintiff to one Joseph Kellogg, the agent of E. M. Crawford, defendant, and the amount of two promissory notes signed by Kellogg, agent, without stating for whom made, given for tobacco purchased of plaintiff for the firm of Crawford & Palmer, and Ridder & Palmer, of which the defendant was the survivor. The account was alleged to have commenced in December, 1856, and continued till 1860. Some small payments in money are alleged to have been made on the account in the years 1857, 1858 and 1861. This action was commenced the 28th day of May, 1866.

The answer of the defendant Crawford sets up, substantially, a denial of indebtedness to plaintiff, and also the statute of limitations.

On the 11th day of July, 1867, or thereabouts, Edgar M. Crawford, as surviving partner of Ridder, Crawford & Palmer, commenced an action in this court against Charles Hildebrant and others to foreclose a mortgage executed by Theodore Hildebrant to Charles Hildebrant, and assigned by Charles Hildebrant to Ridder, Crawford & Palmer as collateral security for the payment of the sum of $800, payable in three years from the date of said assignment, with interest annually thereon. Such assignment was executed the 18th day of July, 1851.

The defendant, Charles Hildebrant, alleges in his answer to said complaint that Ridder, Crawford & Palmer were, in the year 1856 and for some years thereafter, copartners in the manufacture and sale of tobacco at Ithaca. That such business was, during that period, carried on by their agent, Joseph Kellogg.

That in April, 1856, the defendant, Hildebrant, purchased a farm of about three hundred acres of one Isaac A. Hawley.

That in part payment of the purchase-price of said farm Hawley took a house and lot belonging to Ridder, Crawford & Palmer at $800, and Hildebrant made the assignment of this mortgage for $800 to secure the payment thereof to them. That it was agreed by Hildebrant, with Ridder, Crawford & Palmer, that such sum ($800 and interest) should be paid in produce from the farm, except that some money should be paid if necessary. This contract is alleged to have been made with plaintiff's agent, Joseph Kellogg. The answer then set out the cause of action contained in the complaint in the first action; and further alleged that Crawford, the plaintiff in the second action, was indebted to Hildebrant for produce, &c., and prayed an accounting between the parties to the actions.

Both actions were referred to the same referee and tried together. The facts material to a proper disposition of the questions raised are sufficiently stated in the opinion.

The referee found, as matter of law, that the amount due on the assignment of the mortgage was fully paid, and that Crawford was indebted to Hildebrant in the sum of $688.08, and that Hildebrant was entitled to judgment therefor, with costs in both actions. Exceptions were duly taken to the referee's report.

Judgment was entered upon the referee's report, and the appeal was taken by Crawford.

The case was submitted upon printed points.

*Lyon & Donnelly*, for the appellants.

*Ferris & Dowe*, for the respondents.

Present—MILLER, P. J., PARKER and DANIELS, JJ.

MILLER, P. J. There was no error in the finding of the referee that Crawford, as survivor, was indebted to Hildebrant in two promissory notes in the sum of $573.62. These notes were signed by "J. Kellogg, agent," and the name of the principal does not appear upon the face of either of them.

It is alleged in the complaint in the first, and in the answer in the second action, that Kellogg acted as agent in the tobacco business, at Ithaca, for Ridder, Crawford & Palmer for the firm of Crawford & Palmer, survivors, and for Crawford as survivor and successor of Ridder & Palmer. These allegations are admitted in the answer in the first action, and in the reply in the second action, with the qualification in both that Kellogg had no right to make debts or to give notes, but was prohibited from doing so, which was well known to Hildebrant.

Although the signing of the notes by Kellogg as agent, alone and of itself, would not bind the principal, who is not named, yet, in connection with the allegations in the complaint in the first action, that Kellogg, as agent and for the benefit of his principal, and within the scope of his power and authority, purchased of the plaintiff personal property, for which the notes were given, and the evidence given on the trial, the finding of the referee was fully justified. There can be no doubt that a principal is responsible for the act of the agent, which, although an abuse or excess of his authority, was within the general scope of the business he was employed to transact where the party with whom the business is transacted has no notice of any limitation of authority, and would otherwise suffer loss. (*Clark* v. *The Metropolitan Bank*, 3 Duer, 248; *Dunning* v. *Roberts*, 35 Barb., 463, 467; *Whitbeck* v. *Schuyler*, 44 Barb., 269, 471; *Lefler* v. *Field*, 50 Barb., 407–411.) Upon the trial before the referee Crawford testified that Kellogg was an agent for certain purposes; that he had no authority to contract any debt, except through his principals, and was never authorized to give notes or written instruments, or to deal in real estate; but his testimony is contradicted by other evidence in the case, which tends to establish that there was no limitation to Kellogg's authority. The letters from Crawford, introduced in evidence, recognize Kellogg as agent, and his liability for Kellogg's paper as agent, which was laying over. Notes and accounts made by Kellogg were also paid by Crawford's agent, thus again recog-

nizing Kellogg's authority to create such liabilities. There was ample evidence, I think, to warrant the conclusion that Kellogg was authorized to make the notes in question. But even if there was no positive authority to sign the notes as agent, as the proof showed that Crawford had received the property sold, and had the benefit of it, the notes were at least evidence of the amount of the purchase. If the notes were of no avail the purchasers would still be liable for the property which they actually had; and, in this point of view, the amount reputed as due was right. In *De Witt* v. *Walton* (5 Seld., 572), cited by the counsel for Crawford, the complaint was on the note alone, and, hence, the authority is not in point.

Even if it really be questioned whether oral evidence was admissible where the action is on the note alone, yet, with the allegations in the complaint as to the agency and the purpose for which the notes in question were made, it was clearly admissible to prove in this manner that Kellogg was an agent.

It is insisted that the referee erred in permitting Hildebrant to testify to a conversation between Ridder, one of the partners, and Kellogg, in the presence of Hildebrant, in relation to the taking of produce in payment of the $800 indebtedness.

Kellogg and Ridder were both deceased, and Crawford was the surviving partner. Hildebrant was present at the conversation between Ridder and Kellogg, when Kellogg told Ridder that he had sold the witness the house and lot, and he was to have the produce of the farm to pay for it. Kellogg asked Ridder what he thought of the arrangement to get produce in pay for the house and lot, and Ridder said that he thought it was a good idea. This conversation was designed to show the liability of the firm to Hildebrant on the alleged contract, and the evidence was objected to upon the ground that it was a transaction or communication with a deceased person, within § 399 of the Code, and therefore was not admissible. I think that within the principle of *Simmons* v.

Hildebrant v. Crawford.

*Sisson* (26 N. Y., 264), the transaction or communication respecting which the testimony was given, was not between the witness and the deceased, but between the deceased and a third person, and therefore the testimony was proper. In the case cited, it was held that the prohibition of § 399 does not prevent a party from testifying in an action in which the legal representatives of a deceased person are adverse parties, to a conversation between the deceased and a third person, which was overheard by the witness, and that the hearing of such conversation is not a transaction between the deceased and the witness. This is directly in point. (See also *Lobdell* v. *Lobdell*, 36 N. Y., 333.)

The evidence of the agreement made between Hildebrant and Kellogg as to the house and lot and mortgage, was also competent testimony. It was not a transaction or communication within § 399 of the Code. Nor was proof that the payments were to be made in produce and grain from the farm any contradiction of the written agreement of the mortgage. It was admissible evidence to establish payment in a particular manner.

The statement of Hildebrant's account was also competent testimony. There was evidence to prove that the books were lost; that the statement was a copy of the account which had been compared with the books. This was the highest evidence which could be produced under the circumstances, and was properly admitted.

I also think that the letters were properly received as evidence. It is alleged that they were immaterial, but it is not pointed out in what respect, if any, they were liable to this objection. Nor is it apparent from their perusal that they were not pertinent.

The evidence as to the wood alleged to have been delivered to Kellogg, as agent, was objected to upon the ground that there was no such claim made in the pleadings, and no amendment was asked for upon the trial. It does not appear to be named specifically in the pleadings. Nor does it appear from the case that any sum was allowed for wood, and therefore if there

was error in admitting the evidence, it is not apparent that any injury was done.

As it would have been proper to amend the pleadings so as to include the wood upon the trial, and I am inclined to think even now an amendment might be made, the admission of the testimony would not be sufficient cause for a new trial.

The position taken that the judgment is against the weight of the evidence, and that therefore it should be reversed, cannot, I think, be maintained. The defence to the mortgage was that the debt had been paid, and the principal evidence to prove payment was the testimony of Hildebrant, to the effect that there was an agreement between Joseph Kellogg, the agent, and himself, which was sanctioned by Ridder, one of the assignees of the mortgage and partners, that it was to be paid in produce from the farm. It is claimed that this testimony is contradicted by various facts and circumstances ; but it is a sufficient answer to this position to say that while many of those facts tend strongly to contradict Hildebrant, it is by no means clear that they are not sufficiently explained. It was a question of credibility to a great extent, and the referee, after hearing Hildebrant testify, has thought proper to credit his direct testimony and the explanation he has given to the facts which seem to contradict his statements. I am not prepared to say that there is such a preponderance of testimony against Hildebrant's version of the matter as would justify a reversal of the referee's decision upon this question of fact.

The referee allowed Hildebrant costs in both actions, although both actions were heard together. I see no reason why the party succeeding should not have costs in both actions, so far as they were separated. When heard together, perhaps, only the trial fee is chargeable ; but until a trial, the costs must necessarily be separate. This is not a case where causes are consolidated in one action by order of the court and a single suit only is pending. (See 17 Wend., 228.) The decision of the referee was correct, and the amount to be taxed was a question to be determined upon the adjustment

of the costs. If any improper charge was made, the clerk should have deducted it, and if he erred, it should be corrected in an appeal from the taxation.

There is no other question in the case which requires discussion, and there being no error, the judgment must be affirmed with costs.

Judgment affirmed.