## In re WESCOTT.

(Supreme Court, Appellate Division, Second Department.. November 29, 1898.)

1. ADMINISTRATORS—CLAIMS—SERVICES RENDERED DECEDENT—CONTRACTS.

Two sisters resided together. One was an invalid suffering from consumption, and for six years prior to her death her sister had cared for and nursed her. Decedent had agreed to compensate her sister for such services, to the value of the estate of which she should die possessed. A half-sister and an aunt each testified to statements of decedent as to such agreement. Each of the two sisters intended to make a will in favor of the other, but by mistake decedent executed her sister's will. If the allowance to the sister for her services had been made, based on quantum meruit, the estate of decedent would not have been more than sufficient to compensate her. *Held*, that the evidence sustained the agreement to compensate the sister.

2. SAME—VALIDITY.

A contract by an invalid to compensate her sister for caring for and nursing her during the period prior to her death, to the extent of the estate of which she dies possessed, is valid and enforceable.

3. SAME—ENFORCEMENT.

The fact that property was conveyed by an invalid in direct contravention of an oral agreement to compensate her sister for caring for and nursing her, to the extent of her property remaining after her death, does not defeat the sister's right, where the evidence clearly discloses the existence of the agreement, and the services rendered pursuant to it.

4. SAME—WILLS.

Where compensation for the care and nursing of an invalid was to be made by the invalid through the medium of a will, the fact that the will was not executed does not defeat a recovery of the compensation, under the contract, after the invalid's death.

54 N.Y.S.—35

Appeal from surrogate's court, Dutchess county.

Judicial settlement of the accounts of Matilda R. Wescott, administratrix of the estate of Adaline M. Wescott, deceased. A decree was rendered, and there was an appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Edgar M. Doughty (Samuel A. Davis, on the brief), for appellant.
George Wood, for respondent.

HATCH, J. Matilda R. Wescott is the sister of the deceased, and both resided with their father until six years prior to the death of Adaline, when the father died, and thereafter the sisters lived together. The testimony satisfactorily establishes that Adaline was an invalid, suffering from consumption, from the effects of which she died. During the six years prior to Adaline's death, Matilda cared for and nursed her. It is evident that as Adaline slowly approached her dissolution the care and nursing of her became more burdensome, and the services rendered more constant and exacting. There is no dispute but that the services, care, and nursing were rendered with fidelity covering the whole period. Adaline recognized the obligation to Matilda, and the evidence is convincing that she agreed to compensate her therefor, to the value of her estate. Upon the proof, if the allowance had been made to Matilda, based upon quantum meruit, it would not have been excessive to have allowed her therefor the full amount left by Adaline. The learned surrogate, however, based his decision upon the existence of a contract between Adaline and her sister, whereby, in consideration of the care and nursing by Matilda, Adaline agreed to compensate her with all the property of which she should die possessed. The conclusion of the learned surrogate has support in the testimony. It appeared that each sister intended to make a will in favor of the other. These wills were prepared, but by mistake one became substituted for the other. Adaline executed Matilda's will, and Matilda executed Adaline's. This mistake was not discovered until after the death of Adaline. It was testified by Mr. Anthony, who prepared these wills, that his recollection was that Adaline stated that, if she outlived Matilda, she would need Matilda's property for her support, and, if Matilda outlived her, she would deserve Adaline's share of the property, for the care she had taken and would take of Adaline. Mrs. Stevens, a half-sister, testified that Adaline told her—

"That they had agreed that her sister Matilda was to take care of her as long as she lived, and she was to have whatever money of hers that was left, for pay for taking care of her. She told me that three or four times. I can't give the dates, but I think it was in June before her death."

The witness further testified that Adaline told her about the will, and also of the agreement to pay for the care and nursing. Lizzie Hoyt, an aunt, testified that Adaline stated to her:

"When I am done with what I have, I want my estate to go to Tillie, for what she is doing for me. * * * I have agreed to give Tillie all of my estate, for the care she has taken of me, and I haven't half enough to pay her for that."

While it is doubtless true that the evidence is susceptible of a construction of intent to give an estate to Matilda, and that such intent failed in execution, it is equally true that it is also sufficient upon which to find an agreement to compensate for services, quite independent of an intent to give the estate. Such contract is valid and capable of enforcement. Robinson v. Raynor, 28 N. Y. 494; Boughton v. Flint, 74 N. Y. 476. Neither does it fail where the compensation was to be made through the medium of a will, and none was ever executed. Shakespeare v. Markham, 10 Hun, 311; Parsell v. Stryker, 41 N. Y. 480. A conveyance of the property in direct contravention of the agreement will not suffice to defeat the right, where the case clearly discloses the existence of an agreement to compensate, and service is rendered pursuant thereto. Erwin v. Erwin (Sup.) 17 N. Y. Supp. 442; 139 N. Y. 616, 35 N. E. 204.

In the present case, the contract being established, the claimant became entitled to an allowance of the agreed compensation. This is accomplished by the decree, which should be affirmed, with costs to the respondent. All concur.