RUBY J. BRITT v. O. A. HALL, Administrator of the Estate of REUBEN S. BENNETT, Deceased; EMILY A. MACFERREN, Appellant.

**Evidence:** RECOGNITION OF ILLEGITIMATE: *Personal transaction with decedent.* In an action against an executor under Code, section 1 3385, authorizing an illegitimate to inherit from the father in case he has recognized the child in writing, plaintiff's evidence of the receipt of letters from her putative father recognizing the relation between them, and that the letters were in the father's handwriting, is not a personal transaction with a deceased person, which is inadmissible under section 4604; and especially as the evidence as to the receipt of the letters proves only the fact that they were written by the father.

SAME. Evidence, including letters written by a father to his illegiti- 2 mate child, considered, and *held* to authorize the child to inherit from the father, under Code, section 3385, authorizing such inheritance when the child is recognized in writing by the father.

DECLARATIONS RECOGNIZING ILLEGITIMATE. Declarations by a deceased parent recognizing an illegitimate child are admissible as declarations against interest in an action by the child against the father's executor to be allowed to inherit under the Code, section 3 3385, authorizing an illegitimate to inherit from the father if recognized either publicly and notoriously or in writing; but declarations denying paternity are not admissible.

*Appeal from Hamilton District Court.*—HON. B. P. BIRD-SALL, Judge.

WEDNESDAY, MAY 14, 1902.

PLAINTIFF, claiming to be the illegitimate daughter of one Reuben S. Bennett, deceased, asks that she be decreed to be the sole surviving heir of the deceased, and entitled to receive the entire estate, both personal and real, of which the said Reuben S. Bennett died seised, as against the defendants, who claim as collateral heirs. A decree was entered for plaintiff as prayed, from which defendants appeal.—*Affirmed.*

*Wesley Martin, J. L. Kamrar,* and *W. J. Covil* for appellants.

*Wm. Asher Howard* and *T. J. Walsh* for appellee.

McCLAIN, J.—It appears that Reuben S. Bennett died in Hamilton county, Iowa, in 1898, having lived in Iowa more than forty-four years, and accumulated a considerable estate. He was never married. Plaintiff was born in a town in Scioto county, Ohio, in 1854, the illegitimate child of one Eliza Dodge, who at that time resided with her parents across the street from the house where Reuben S. Bennett then resided with his parents. The contention of plaintiff is that Reuben S. Bennett was her father, and that, after the plaintiff had intermarried with one Henry C. Miller, and while she was residing with her husband in Louisville, Ky., there was a correspondence by letter between her and Bennett, in which the latter recognized her as his illegitimate daughter, and that at his request she met him at the place of their former residence in Ohio, where he publicly and notoriously acknowledged their relationship. While there is in the record testimony of many witnesses, tending to show a public and notorious recognition, we think that the letters of Reuben S. Bennett contain a recognition in writing such as is contemplated by Code, section 3385, and we need not give further attention to the evidence of general and notorious recognition sought to be established by oral testimony. With reference to the letters, however, it is claimed that plaintiff was not competent, under Code, section 4604, which prohibits a party to a suit against the administrator or heirs of a deceased person from testifying with regard to personal transactions or communications between such witness and the deceased, to give evidence with reference to the receipt thereof, and the case of *McCorkendale v. McCorkendale,* 111 Iowa, 314, is relied upon; but the letter referred to in that case was one claimed to have been written by the deceased father to the child's mother and the mother was asked to testify with ref-

erence to the letter, and to explain the circumstances under which it was written and received, for the purpose of establishing the previous relation between deceased and herself. The letter, unexplained, did not amount to a recognition of the illegitimate child. But in this case the testimony of plaintiff was as to the fact of receiving the letters through the mail, and that they were in the handwriting of Reuben S. Bennett. Neither of these facts involved any transactions or communication with the deceased, and the testimony was competent. *Simmons v. Havens,* 101 N. Y. 427 (5 N. E. Rep. 73) ; *Daniels v. Foster,* 26 Wis. 686 ; *Sankey v. Cook,* 82 Iowa, 125. There was other evidence that the signatures to the letters in question, purporting to be written by Reuben S. Bennett, were his, and we think there can be no question but that these letters may be considered. It may also be suggested that the receipt of the letters by plaintiff was not a material fact. The question is whether they were written by deceased, and contain a recognition of plaintiff as his daughter. That they were so written is established beyond any reasonable controversy. Looking, then, at the letters which passed between plaintiff and deceased, we find that in the first one which was written by her to him she asked him to allow her to call him father, and referred to herself as his daughter ; that in the reply to this he expressed an interest in her, excused himself for not previously communicating with her by the fact that he had asked her mother whether the daughter knew who her father was, and understood the mother to express a desire that the daughter should not know. He also said that he would like to see her and promised to visit her in the future, asking that she and her husband should also visit him. He asked forgiveness for past wrongs, and promised not to forget her in the future, concluding with, "All that I will offer you at present is my love,— to love you as a father ought to love his daughter." Without quoting further from the correspondence, it is beyond question that deceased understood plaintiff to claim that she was his il-

legitimate daughter by Eliza Dodge, and assented to the correctness of this claim. As further establishing a full recognition of this claimed relationship, it appears that, after having met the plaintiff, at her own solicitation, at their former Ohio home, and visiting with her several days, he again wrote her a letter, in which his relation to her as father was fully admitted. It will not do to say that the language used in these letters, implying the relationship of father and daughter, was used inadvertently, or merely by way of acquiescence for the purpose of gratifying the wishes of the plaintiff. After the birth of plaintiff, and before deceased left the place of their common residence in Ohio, deceased had been charged with being the father of plaintiff, and had been arrested in some proceeding based on that alleged fact. It appears that the defendant strenuously denied that he was the father, declaring that the paternity of plaintiff was wrongfully imputed to him. He well knew, therefore, when he wrote these letters that it was a material question whether he was the father of plaintiff or not, and we cannot conceive that, having previously denied such relationship, he then admitted it without intending to be understood as conceding everything which plaintiff sought to have him acknowledge.

It is contended that the fact of paternity was not established, but, without going through the evidence in detail, it is sufficient to say that the fact is clearly shown by proof of the declarations of the mother, who died long before the commencement of this action, and by the declarations of Bennett, himself, as well as by the direct testimony of the plaintiff, who, while she could not, of course, testify to the fact, could testify as to the statements of those related to her by family connection. *Alston v. Alston,* 114 Iowa, 29. It is to be noticed that the declarations of Bennett admitting paternity are admissible in this controversy as having been made against his interest, while declarations denying paternity would not be against his interest, and therefore would not be admissible. But, without applying any such technical

rules to the evidence, we find that there is a decided preponderance in the testimony establishing the fact that deceased was the father of plaintiff. His entire conduct between the beginning of the correspondence with plaintiff and its close, which, however, it may be said in passing was some 17 years before his death, is inconsistent with any other theory. It is not necessary to cite the cases in this court relating to the sufficiency of the evidence to show general and notorious recognition. In none of them is there any suggestion that such a recognition in writing as that shown here should not be given its full weight and effect.

Our conclusions are in entire harmony with those of the judge who tried the case below, and the decree is AFFIRMED.